Good morning, Your Honors. My name is Daniel Lipinski, and I'm with the Wilentz Law Firm in Woodbridge, New Jersey, and I'm here on behalf of the Plaintiff Appellant, Ruth Koronthaly. Do you wish to reserve time for a question? Yes, I'd like to be able to reserve five minutes rebuttal time, please. Would you adjust the microphone, please? Thank you. Presently, the issue before the Court is whether— You realize, of course, that every word that is said during the argument is recorded and can be provided to us in a transcript if we so desire it, and that's why I'm particularly interested that you speak into the microphone so that we can hear every pearl of wisdom that comes from you. Yes, Your Honor. I'm glad that you refer to them as pearls of wisdom as compared to things that can be used against me. Presently, the issue before the Court is whether the District Court erred in dismissing plaintiff's consumer fraud cause of action where the plaintiff had alleged that the defendants in the action had omitted material facts regarding their products and where the plaintiff had pled that she would not have purchased the products had those facts been disclosed. You can start with the standing issue. Yes, Your Honor. From a standing standpoint, we feel that the District Court erred in looking at the standing issue from a product liability standpoint as compared to a consumer fraud standpoint. This isn't a product liability cause of action. It's a consumer fraud cause of action, and had the Court analyzed this matter under a consumer fraud standing as compared to a product liability cause of action standing, there wouldn't be an issue here. Well, what is the injury or the damage that your client has suffered? Client has suffered damage in that she didn't get the benefit of the bargain. She didn't get what? The benefit of the bargain. What bargain did she not get the benefit of? She purchased a lipstick product. The product failed to disclose the presence of lead in the product due to the fact that it did not, had the product disclosed the presence of lead, she would not have purchased a product. And so what damage has she suffered? She has suffered a damage in that she paid for a product that she can and will no longer use due to the presence of lead. So the harm is what? That she spent some money for lipstick? The harm is that she spent money for lipstick and purchased a product that she can no longer use because of the presence of lead. So let's assume that she's very uncomfortable, and how much do you think she spent altogether for this particular brand of lipstick by these defendants? She bought various types of lipstick from various defendants. Let's assume in total if she purchased five different types of lipstick that she spent maybe $50. I don't know the cost of lipstick on a per stick basis. There may be situations where some of them she's used up. We have in our possession sticks of lipstick that she hasn't used and that she stopped using once it was disclosed that they contained lead. So the harm you're alleging here is some type of economic harm? That's correct. The only harm that we're alleging here is an economic harm. And it's, put yourself in our shoes, isn't there some point where it's de minimis? I mean, it's just, there really isn't enough to say that there's harm without looking kind of silly as a court? Well, Your Honor, there may be a point where it's de minimis, but the class action tool is designed to be able to handle in Moss those situations where an individual plaintiff coming before the court in order to argue a minimal economic injury. Not a minimal, but a de minimis. A de minimis, I would put before the court that the out of pockets that my client has suffered is not de minimis in this particular situation. And I think if you were to take a look at defendants and the billions of dollars of profits that defendants are able to make from these particular products, it no longer becomes a de minimis injury. Yeah, but another aspect of de minimis. Is there any demonstration that this amount of lead in lipstick injures anyone, or that this amount of lead in lipstick has been set as a standard which violates any regulatory standard established? Your Honor, I think the issue here is not whether it can... Answer my question. Okay, I'm sorry then, if you could repeat your question. Is there any... Was there any injury to her? Is there any standard in lipstick manufacture that says that this amount of lead exceeds any regulatory standard or can cause harm to a human being when used in a lipstick? There's no regulatory standards that address that, Your Honor. But if I may... So it's her personal decision that this amount of lead could injure her? That's correct, Your Honor, and I think she is... And should we allow the whim of consumers who are not supported by any set standard to determine whether they have bought a product that they wish they hadn't bought? Your Honor, my client is not looking to set any type of standards as to what an acceptable or unacceptable level of lead is in any particular product. That's not the question I asked either. My question was, should we bow to the whim of a consumer who, without any set standard, determines their own personal feeling that this amount of lead could harm them when there is no regulatory or health standard that determines that it can? Your Honor, because there's no regulatory standard doesn't mean that there isn't harm there. But how do we know there's harm beyond her personal whim? I think my client should have the right to be able to decide whether she wants to take that risk. And if it were properly... There's lead in everything, right? No, Your Honor... There's lead in the earth, there's lead in the atmosphere. Yes, there's lead everywhere, yes. But a reasonable expectation of a consumer would not be that there would be lead in a lipstick product, and to the extent that there is lead in that lipstick product, it would be disclosed. But just adding on to that for just one second, and we'll come back. All you have is there was a Campaign for Safe Cosmetics report by a consumer group that says there might be a problem here. And that is directly contradicted by the FDA. So not only you have a suspicion by a group, contradicted by a government agency responsible for looking into this. So what kind of harm do you possibly have? Other than she got a little nervous because she bought lipstick and found out from this consumer group that it has lead in it. The harm, Your Honor, is that she could have had the option to buy a different product that would not have put her in a situation where she was exposing herself to lead. But she's not exposing herself to any level of lead that has been determined to be harmful. What I can put forward as an example is the following. The particular stick of lipstick, in and of itself, may not raise her to a high level of lead that could be harmful. However, from an individual standpoint, if she is someone, if we take a look at the Fellner v. Tri-Union case, if she is someone who eats an excessive amount of tuna fish and increases the level of lead in her body due to an excessive amount of tuna that she eats, the lead that's in the lipstick may put her over the top. Has the lead in her body been tested? The lead in her body has not been tested. So how do we know that she has even consumed any lead from tuna fish or lipstick or any other possible source or the atmosphere around her? Again, I don't think that there's relevance there because we're not arguing a physical injury. We're not arguing anything about the level of lead that she has in her body. We're arguing the fact that the defendants failed to disclose a material fact. And the material fact was that they used lead in the product. Is it a material fact if it will not cause any harm to the consumer and more particularly has not caused any harm to Mrs. Kornthal? From an economic standpoint, no. And if put before a jury, a jury would make the determination as to whether or not it's material that the lead content was or was not disclosed. However, the issue that my client has put before the court is that she was not given the option to be able to make a decision due to defendant's omissions. She was not granted the opportunity to be able to evaluate the product properly and purchase a product. The product was not what she bargained for. She purchased a lipstick product. Defendants failed to disclose the fact that it contained lead. Well, she received the lipstick. She paid, I don't know, $9 or $10 for this package of lipstick and she received it and used it. Did she not? It depends on how you define the term use. Use in full? No. Did she purchase it? Did she apply it to her lips? She applied it to her lips but not the entire. For example, as I said, we have several sticks of lipstick that once she found out they contained lead, she took them and she put them aside. She paid $10 for a lipstick product. She has $5 worth of the product left that she can no longer use because she doesn't want to expose herself to lead. She has economic harm associated with the inability to use the product because it wasn't what she bargained for. You keep saying what she bargained for, but let's go back to Judge Roth's question. She bargained for safe lipstick and based on what the FDA says, this is safe. So where was there some sort of breach in the bargain, if you will? She bargained for a product, Your Honor, that she did not believe contained lead. She didn't bargain for that. I mean, she bought lipstick. There was no bargaining done at all. She bought lipstick, but she herself said and pled in the complaint that had she been aware of the fact and had defendants disclosed the fact that the product contained lead, she would not have purchased the product. Were there any indications on the numerous sticks of lipstick that she purchased that as to what the contents of it were? There were indications as to the contents, but there was no indication that lead was contained in the product. I didn't hear that. Were there indications that there were lead in it? No. And the FDA says, as Judge Ambrose pointed out, that there's nothing wrong with these lipsticks. What the FDA found was that... What the FDA did not find was that there's harmful levels of lead in the lipstick products. Okay. Thank you very much. Thank you. Mr. McDonald. Good morning, Riders. May it please the Court, my name is Michael McDonald. I represent Procter & Gamble Distributing, LLC. And I'll be discussing the issue of standing. I believe we have eight minutes reserved for our time. If you could just take us through your analysis of the two Fifth Circuit cases that are being talked about quite a bit in the briefing, that is the Cole and Rivera cases. Yes, Your Honor, I'd be happy to. We believe that the district court decided correctly that Rivera was the most closely analogous case. In Rivera, the plaintiff purchased a prescription medication, Durac, it was a pain medication. The drug was recalled because the manufacturer could not guarantee that users would use it for a short time period as it was intended. So the plaintiff in the case had purchased Durac, had used Durac, and had not pled that the Durac did not work for her. It gave her adequate pain relief. Yet she claimed, much like Ms. Garantelli does here, because she wanted to see more warnings on the product, she wanted her money back. And significantly, what the Fifth Circuit said in that case was, merely asking for money does not establish an injury in fact. And the key to the analysis on injury in fact is what happened to the plaintiff. In the Rivera case, she received the benefit of her bargain because she bargained for an effective painkiller and that's exactly what she received. In this case, as Your Honors have pointed out already, the plaintiff, Garantelli, bargained for a lipstick product from a known manufacturer which would provide her with the benefits of a color lipstick product. She received the benefit of her bargain. Simply because she has a change of mind and has buyer's remorse doesn't mean that she has an injury in fact. The Cole case from the Fifth Circuit is somewhat distinguishable, but it also supports the position here. The Cole case involved the sale of General Motors cars with defective airbags. There was an admitted defect in those cases because the airbags were known to deploy unexpectedly. And there was a recall, wasn't there? There was a recall in that case, yes. And while the plaintiff in that case did not experience the unexpected deployment of her airbag, she claimed that she suffered an economic loss by virtue of her purchase of the vehicle. And the Fifth Circuit in that case analyzed Rivera under the injury in fact standard and determined that Rivera was distinguishable because in the Cole case, the plaintiff did not receive the benefit of her bargain. She did not bargain for a car with an airbag that would deploy unexpectedly. She bargained for a functioning car. The manufacturer did not intend to sell a car with an airbag that would deploy unexpectedly. In addition, the court noted that her economic loss in that case was a loss of use of the vehicle because it was recalled and it could not be used safely. There was also significant delay in repairing the vehicle, so the plaintiff experienced economic loss for not being able to use her car. Those two cases from the Fifth Circuit Court of Appeals support the district court's decision here. The key issue is did the plaintiff receive that which she was promised? Did the plaintiff receive something less valuable than she would have received? The answer is no. She bargained for a lipstick product. She received a lipstick product. The fact that she now changed, has buyer's remorse and determines that she doesn't want the lipstick or doesn't want to use it. So you can have standing conferred by economic harm, is that correct? That's correct, Your Honor. And what test would you suggest that we apply to differentiate when there is economic harm  necessary for standing and that which does not? Put yourself in our shoes. I think the question that the court has to ask is did the plaintiff receive something less valuable than what she was promised? It's not a question of did you purchase a product? What the plaintiff's claim in this case intends to do is to change the law of standing significantly. And by finding standing here, this court would be saying that anytime a consumer purchases a product, they've established standing because they have suffered an economic harm by virtue of their purchase. Respectfully, that is not the law of standing in the circuit nor are we aware of that being the standing law anywhere. The issue is... Should there be defined standards by which to test whether the plaintiff has received something less valuable than what she was promised or should it be simply the plaintiff's own decision that she received something less than what she was promised? Well, I think the Supreme Court has spoken on that issue by saying that an injury, in fact, must be concrete. It cannot be subjective. And what Your Honor, I think, is getting to is the fact that what the plaintiff has here is a subjective belief that she's been injured because she has some subjective concern that she doesn't want to have lead in her cosmetics. But there... Is there any standard, concrete standard, that has been violated by the amount of lead that is in... Should I go scrub my face? No, Your Honor. I think as Your Honor pointed out before when questioning the Plaintiff's Counsel, there is no standard for the amount of lead that's permitted in lipstick. There is a regulation, an FDA regulation, which governs the amount of lead that's permitted in color additives. So, other than that standard and the fact that Your Honors have pointed out, the FDA has already concluded there's nothing harmful about the lipstick they've tested, there is no governing standard as to what levels of lead should be in any product. I have no further questions. Thank you. Thank you. Mr. Haworth. Good morning, Your Honors. May it please the Court. My name is Scott Haworth and I represent L'Oreal USA, Inc. If I may address a couple of the initial points. Counsel said that You want to address what issues? If your co-counsel is addressing standing, what are you I'm going to address Product Liability Act preemption. And I'm going to address by way of extension the Consumer Fraud Act. I would like to preliminarily address a comment that was made by my adversary when he was up here to the extent it's relevant. Counsel represented that the plaintiff claims that she can and no longer will use certain of the tubes of lipstick that is the Color Riche True Red Incredifil Lip Color Max Red Moisture Extreme Midnight Red and Moisture Extreme Scarlet Simmer that she purchased. That's not in the complaint. That's not in the record before this Court. Every time I hear words like I just say who makes up these names? But anyway. That's an excellent question, Your Honor. I wanted the Court to be aware of what it is we're talking about. But obviously we don't get to any of these issues if there is no standing, correct? That is absolutely correct, Your Honor. Is L'Oreal still putting lead in their lipstick? L'Oreal does not put lead in their lipstick, Your Honor. L'Oreal has never put lead in its lipstick. I beg your pardon. Whatever lead is alleged to be in the lipstick is that practice still conducted by L'Oreal? Your Honor, lead is a constituent ingredient naturally occurring in certain color additives that are governed and regulated and permitted by the FDA. To the extent those colors are still used Yes. You and I have to be very careful about what shade of lipstick our ladies are using when we kiss them? We only have to be careful, Your Honor, if there's harm. And there is no harm. To drill down a little further So nothing can happen to me, let me put it that way. That is exactly so, Your Honor. At least nothing related to the lipstick. I feel the lead. All I gotta say is I'm not going there. In the Fry against L'Oreal case, the Northern District of Illinois, Your Honor, mentioned that when you compare the launching point of the appellant's case, the standard in candy, that based upon the allegation that the average woman will ingest four pounds of lipstick during a lifetime, you're talking about 45 times less than the standard in the candy that the plaintiffs make such an issue with and use as their launching point. It's simply preposterous. Now, with respect to the standing, Coughlin and Cole, as counsel said before, out of the Fifth Circuit, are contract-based cases. In Coughlin, the plaintiff purchased, bargained for, at arm's length, a fiberglass boat. The plaintiff did not get a fiberglass boat. The plaintiff didn't get what he contracted for. He got a hybrid fiberglass wood boat, which is a completely different, less valuable product. In Cole, the plaintiff bargained for, at arm's length, and had warranted and had a repair and replace agreement for side impact airbags. The plaintiff did not get side impact airbags. Side impact airbags, that component that doesn't work, isn't worth anything. Put aside the decreased value of the car as a whole, the side impact airbags that were paid for, that were bargained for, don't work. The plaintiff here says that she bought lipstick and that it was not supposed to have lead in it, and it did have an appropriate lipstick. The plaintiff is making a subjective statement that she doesn't like in hindsight that she found out that a constituent ingredient has lead, but there's no harm, which brings me to my main point that I am going to speak on, which is very simple. In New Jersey, we have the Product Liability Act. The court in Sinclair talks about the scope of the Product Liability Act and to know whether it applies in this case, you've got to look at the complaint. The complaint speaks to  distribution, and marketing of lipstick. It speaks to a design defect in lipstick. It speaks to a failure to warn about a constituent in the future that could cause some sort of personal physical harm at some point in the future. It is an alleged potential unrealized risk. Now, the court in Sinclair essentially holds that those are product liability actions. The scheme of the New Jersey Product Liability Act is to get rid of those allegations. That includes consumer fraud. You don't get to turn a garden variety failure to warn or design defect case into a consumer fraud act where, and this makes it sound really silly, you get up and you admit I have no harm. However, the fact that I have no harm not only means I get a consumer fraud act case, but it means I get punitive damages and it means that I get attorney's fees. So the worse your failure to warn claim, the better your consumer fraud claim. The worse your product  claim, the better your consumer fraud claim. That's exactly what I'm saying, Your Honor. I think that's all I have. Thank you. Thank you very much. Mr. Lipinski. Your Honor, thank you very much. A few points that I'd like to address is first of all the statement by my adversary that this is plaintiff's subjective belief found in hindsight. Let me just ask you a question. You said that some possibility of claiming that there's standing here is the coal case in the Fifth Circuit. Yes, Your Honor. Yet you didn't deal with it in your opening or your reply brief. That's correct, Your Honor. We did address it at the request of the Court following the briefing. I believe that coal does bring up the point and properly so that as long as an individual alleges an economic harm they do have standing. When you take that and apply that to this case in particular and you see that this is a consumer fraud case compared to a product liability case there is standing. What I would say is that if this were a 12B6 issue and the Court said look you poorly pledged your complaint and therefore I'm dismissing the complaint because it's poorly pledged that would be one thing but to say that an individual does not have the right to come before a court and say she has a right to redress from a standing standpoint that's inappropriate. The Rivera case that was mentioned by our adversary that's a failure to warn case we're not saying that the lipstick should have carried a warning that says this is a failure to warn case we would be saying you failed to properly warn of the presence of a product and we have therefore suffered injury and harm to our self. The product has caused us injury. From a consumer fraud standpoint we're not saying that the product has caused us injury. We're saying the actions of the manufacturer and the manufacturer have caused economic harm. And there's a difference there. This is not quacking like a duck to the extent that the duck is a product liability duck. If the determination is made by the manufacturer   manufacturer and the manufacturer has the right to amend in order to properly plead. What we have here is the court finding a product liability clause of action saying you don't have standing under the product liability act. My question was if this is a product liability case what is your best argument to support your position? If this is a product liability case, Your Honor, I don't have an argument to support my case. If this is a product liability cause of action we have not asserted an injury. If this is a product liability case I don't have an